**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| IYS VENTURES, LLC; MUWAFAK RIZEK; | ) | |
| I MART STORES L.L.C.; LEANNE HOLDINGS | ) | |
| LLC; and KENAN ENTERPRISES, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiff, THE HUNTINGTON NATIONAL BANK ("Huntington"), for its Complaint against Defendants, MUWAFAK RIZEK ("Rizek"), IYS VENTURES, LLC ("IYS Ventures"), I MART STORES L.L.C. ("I Mart"), LEANNE HOLDINGS LLC ("Leanne"), and KENAN ENTERPRISES, INC. ("Kenan") (sometimes collectively, "Defendants"), states as follows:

## NATURE OF THE CASE

1.     This action involves Defendants' scheme to defraud Huntington out of over $1.8 million. The scheme essentially unfolded as follows: Rizek, as member and chief executive officer of IYS Ventures, opened three business deposit accounts at Huntington. He then fraudulently provided false information to Huntington about the size and health of IYS Ventures to induce Huntington to provide IYS Ventures with an increased amount of immediate access to funds that Rizek transferred via Automated Clearing House ("ACH") transactions into IYS Ventures' Huntington accounts from accounts that he controlled at other financial institutions. Rizek knew that those other deposit accounts did not have sufficient funds for the other financial institutions to honor the ACH transactions. But by the time that Huntington learned that the other financial institutions had dishonored the ACH Transactions, Rizek had already wire transferred the money

out of Huntington to deposit accounts in the name of other entities that he controlled at other financial institutions. This fraudulent activity created overdrafts of over $1.8 million in the IYS Ventures' Huntington accounts. Rizek has ignored all of Huntington's demands for return of the ill-gotten funds to cover the overdrafts.

## PARTIES

2.      Huntington is a national banking association that maintains its corporate headquarters in the state of Ohio, with its main office at 17 South High Street, Columbus, Ohio 43215. Accordingly, Huntington is a citizen of Ohio.

3.      Rizek is an individual, who, upon information and belief, resides at 7924 Keystone Road, Orland Park, Illinois 60462. Rizek is thus a citizen of Illinois.

4.      IYS Ventures is an Illinois limited liability company, with its principal office listed as 15416 S. 70th Court, Orland Park, Illinois 60462. Rizek is identified as its Registered Agent and its only Manager, with his address listed at 7924 Keystone Road, Orland Park, Illinois 60462. Upon information and belief, Rizek is the sole member of IYS Ventures. Accordingly, IYS Ventures is a citizen of Illinois.

5.      I Mart is a Minnesota limited liability company, with its principal executive office listed as 3017 1st Avenue, Hibbing, Minnesota 55719. Rizek is the only identified Manager, with his address listed at 15416 S. 70th Court, Orland Park, Illinois 60462. Upon information and belief, Rizek is the sole member of I Mart. I Mart is thus a citizen of Illinois.

6.      Leanne is an Indiana limited liability company, with its principal office address listed as 15416 S. 70th Court, Orland Park, Illinois 60462. Rizek is the only identified Manager, with his address listed at 15416 S. 70th Court, Orland Park, Illinois 60462. Upon information and belief, Rizek is the sole member of Leanne. Accordingly, Leanne is a citizen of Illinois.

2

7.     Kenan is an Indiana corporation, with its principal office address listed as 15416 S. 70th Court, Orland Park, Illinois 60462. Rizek is identified as its President, with his address listed at 15416 S. 70th Court, Orland Park, Illinois 60462. Accordingly, Kenan is thus a citizen of Illinois and Indiana.

## JURISDICTION & VENUE

8.     This action gives rise to both diversity jurisdiction pursuant to 28 U.S.C. § 1332, and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

9.     The Court has diversity jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and Huntington is a citizen of a different State than all Defendants.

10.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action asserts claims arising under federal law, including the Wire Fraud statute (18 U.S.C. § 1343) and the Bank Fraud statute (18 U.S.C. § 1344).

11.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) because all Defendants reside or maintain their principal office in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS RELEVANT TO ALL CLAIMS

**A.     Rizek Entered Into The Deposit Account Agreement With Huntington And Opened Three Business Checking Accounts In IYS Ventures' Name.**

12.     Huntington provides various financial and cash management services for individuals and businesses.

13.     On May 5, 2020, Rizek, on behalf of IYS Ventures, opened an Unlimited Plus Checking Account with Huntington in IYS Ventures' name, with an account number ending in x8201 ("Account 8201").

3

14.     In order to open Account 8201, Rizek signed the Limited Liability Resolutions to Open and Maintain a Bank Account or Safe Deposit Box ("Account 8201 Resolutions") and executed a Business Signature Card for Account 8201 ("Account 8201 BSC"). True and correct copies of the Account 8201 Resolutions and Account 8201 BSC are attached hereto as **Exhibits 1** and **2**, respectively.

15.     On June 7, 2022, Rizek, on behalf of IYS Ventures, opened a second Unlimited Plus Checking Account with Huntington IYS Ventures' name, with an account number ending in x2014 ("Account 2014").

16.     In order to open Account 2014, Rizek signed the Resolutions to Open and Maintain a Bank Account or Safe Deposit Box ("Account 2014 Resolutions") and executed a Business Signature Card for Account 2014 ("Account 2014 BSC"). True and correct copies of the Account 2014 Resolutions and Account 2014 BSC are attached hereto as **Exhibits 3** and **4**, respectively.

17.     The same day, Rizek, on behalf of IYS Ventures, opened a third Unlimited Plus Checking Account with Huntington in IYS Ventures' name, with an account number ending in x2027 ("Account 2027," and sometimes collectively with Account 8201 and Account 2014, the "Huntington Accounts").

18.     As with the first two Huntington Accounts, in order to open Account 2027, Rizek signed the Resolutions to Open and Maintain a Bank Account or Safe Deposit Box ("Account 2014 Resolutions," and sometimes collectively with the Account 8207 Resolutions and Account 2014 Resolutions, the "Resolutions") and executed a Business Signature Card for Account 2027 ("Account 2027 BSC," and sometimes collectively with the Account 8207 BSC and Account 2014 BSC, the "Business Signature Cards"). True and correct copies of the Account 2027 Resolutions and Account 2027 BSC are attached hereto as **Exhibits 5** and **6**, respectively.

19.     By executing the Resolutions, IYS Ventures agreed that "overdrafts, if any, shall not be considered to be a loan[.]" *See* Exs. 1, 3, 5.

20.     By executing the Business Signature Cards, IYS Ventures agreed to be bound by the Business Deposit Account Agreement ("Deposit Account Agreement") and the terms contained therein for all three Huntington Accounts. A true and correct copy of the Deposit Account Agreement is attached hereto as **Exhibit 7**.

21.     Pursuant to the Deposit Account Agreement, IYS Ventures has "no right to overdraw [the Huntington] Account[s.]" *See* Ex. 7, p. 7.

22.     Under the Deposit Account Agreement, in the event that IYS Ventures overdrew the Huntington Accounts, IYS Ventures agreed that it "must pay [Huntington] immediately for the amount of the overdraft and any associated fees." *Id.*

23.     Pursuant to Section 13 of the Deposit Account Agreement, IYS Ventures agreed to "indemnify [Huntington] and hold [Huntington] harmless from any claim (including reasonable attorneys' fees)" arising as a result of any debt owed by IYS Ventures to Huntington. *Id.* at p. 11.

**B.     Mechanics Of ACH And Wire Transfers.**

24.     ACH transfers are electronic money transfers into an account at one financial institution (the "Receiving Account") from an account at another financial institution (the "Sending Account").

25.     ACH transfers are initiated when an account holder causes one financial institution to send an instruction through the ACH system to the other financial institution to complete the transfer. The financial institution that sends this instruction is referred to in the banking industry as the Originating Depository Financial Institution ("ODFI"). The financial institution that receives the instruction is referred to in the banking industry as the Receiving Depository Financial Institution ("RDFI").

26.     That is, an account holder can initiate an ACH transfer by causing the ODFI to instruct the RDFI to debit a Sending Account in a specified amount and transmit the funds to a Receiving Account at the ODFI.

27.     Typically, an ACH transfer takes about two (2) banking days to settle. In other words, the Receiving Account at the ODFI does not immediately receive the funds while the RDFI processes the transfer. Nonetheless, most financial institutions that permit their customers to use ACH transfers, including Huntington, make funds immediately available in the Receiving Account during this period (the "ACH Float Period"). The funds made available during the ACH Float Period are referred to here as "ACH Float Funds."

28.     The "ACH Limit" for a deposit account refers to the maximum amount of ACH Float Funds to which the Receiving Account holder has immediate access during the ACH Float Period.

29.     An ACH transfer that cannot be completed for any reason (i.e., insufficient funds in the Sending Account, closure of the Sending Account, etc.) is referred to as a "Dishonored Transaction."

30.     Dishonored Transactions are "returned" to the RDFI when the ODFI never receives the funds requested as part of the ACH transaction.

31.     Unlike an ACH transfer, a wire transfer constitutes a transmission of funds from a Sending Account to a Receiving Account that settles immediately. In other words, funds sent via a wire transfer are immediately deducted from the Sending Account, are immediately available in the Receiving Account, and the transfer instruction cannot be "returned" to the financial institution from where the wire transfer was originated.

C.     **Rizek And IYS Ventures Made False Representations To Huntington Regarding Their Asset And Net Worth Valuations To Increase Their Access To Funds.**

32.     On or around June 13, 2022, Rizek spoke by telephone with Huntington employee Jimmy Liu ("Liu") about Rizek's interest in certain Huntington commercial banking products.

33.     During this conversation, Rizek represented to Huntington that IYS Ventures operates and controls around seventy (70) gas stations. Upon information and belief, this information is materially false because IYS Ventures does not own or control anywhere near that many gas stations.

34.     Rizek also represented that he intended to move all of IYS Ventures' operating accounts from a different banking entity, JPMorgan Chase & Co. ("Chase"), to Huntington.

35.     On or around June 17, 2022, Rizek provided to Huntington employee Mark Freeman ("Freeman") a Statement of Revenue and Expenses and Balance Sheet for IYS Ventures for the period of January 1, 2022 through May 31, 2022 ("IYS Financial Statements"). The IYS Financial Statements stated that IYS Ventures had assets valued at $27,759,716.93. Upon information and belief, the IYS Financial Statements are materially false.

36.     Next, Rizek also provided Huntington with a list of eight properties cumulatively valued at $7,120,000.00 ("Rizek Property List"). Rizek claimed that he personally owned the properties listed in the Rizek Property List free and clear of any liens. Upon information and belief, the Rizek Property List is materially false.

37.     Finally, Rizek provided Mr. Freeman with signed personal financial statements representing a personal net worth of $31,905,679.00 ("Rizek Financial Statements"). Upon information and belief, the Rizek Financial Statements are materially false.

38.     On or around July 5, 2022, Rizek spoke with Huntington employee William Beher ("Beher") and requested that Account 8201's ACH Limit be increased from $75,000.00 to

$150,000.00. At this time, Account 8201 was the only Huntington Account with ACH origination services.

39.     On or around July 11, 2022, based on Rizek's representations about Rizek's and IYS Ventures' financial status and ability to generate cash flow, the other two Huntington Accounts were set up for ACH originations services and each of the three Huntington Accounts was given an ACH Limit of $150,000.00.

**D.     IYS Ventures Agreed To The Terms Of Huntington's Treasury Management Services, Which Allowed Rizek And IYS Ventures To Remotely Send Wire Transfers Out Of The Huntington Accounts.**

40.     In conjunction with Huntington's financial and cash management services, Huntington also provides treasury management services which, among other things, allow its customers to remotely access and transfer funds through Huntington's online platform without having to physically visit a Huntington branch location ("Treasury Management Services").

41.     Huntington's Treasury Management Services include remote access to both ACH and wire transfers.

42.     On or around June 8, 2022, Rizek, on behalf of IYS Ventures, signed and entered into the Treasury Management Services Agreement with Huntington ("TM Services Agreement") to gain access to Huntington's Treasury Management Services. A true and correct copy of the TM Services Agreement and the Authorization and Agreement for TM Services are attached hereto as **Exhibits 8** and **9**, respectively.

43.     Under Part I, Section 2 of the TM Services Agreement, IYS Ventures agreed to "pay [Huntington] the applicable fees and charges disclosed to you for use of [Huntington's services]" and that Huntington was "authorized to charge the fees and charges to any of [the Huntington] Account(s) when due[.]" Ex. 8, p. 3.

44.     Under the TM Services Agreement, in the event of an overdraft, IYS Ventures agreed to "repay [Huntington] immediately, without demand, the amount of such overdraft plus any overdraft fees, charges or interest[.]" *Id.*

45.     Specifically regarding wire transfers, "[i]f an [o]verdraft is created in an [a]ccount in order to complete a wire transfer, [IYS Ventures] agree[d] to immediately repay [Huntington], and [IYS Ventures] agree[d] and authorize [Huntington] to debit any of [the Huntington] Accounts [] in the amount equal to the overdraft and applicable fees." *Id.* at p. 35.

46.     All three Huntington Accounts are subject to the TM Services Agreement. *See id.*, Schedule A.

47.     On or around September 19, 2022, Huntington enabled each of the Huntington Accounts for Treasury Management Services, which allowed Rizek to remotely send funds via wire transfer out of the Huntington Accounts.

**E.     Rizek And IYS Ventures Continued To Make False Representations To Increase IYS Ventures' ACH Limit.**

48.     In September 2022, Rizek requested an increase in IYS Ventures' ACH Limit for the Huntington Accounts.

49.     Rizek represented to Huntington that he was in the process of moving all of IYS Ventures' operating accounts from Chase to Huntington and that an ACH limit increase would, among other things, facilitate the transfer of IYS Ventures' operating accounts.

50.     Based on Rizek's representations, Huntington increased the ACH Limit from $150,000.00 to $350,000.00 for each of the Huntington Accounts.

51.     In or around late September, Rizek requested another ACH Limit increase for the Huntington Accounts.

52.     Rizek represented to Huntington that he was still in the process of moving all IYS Ventures' operating accounts to Huntington and that he required an increase in IYS Ventures' ACH Limit to cover IYS Ventures' daily accounts payable, which, according to Rizek, totaled about $650,000.00 per day.

53.     On or around September 30, 2022, based on Rizek's representations, Huntington increased the ACH Limit to $650,000.00 for each of the Huntington Accounts.

54.     On or around October 24, 2022, based on Rizek's representations that he was finalizing the transfer of IYS Ventures' operating accounts to Huntington, the Huntington Accounts were approved for a final increase of the ACH Limit from $650,000.00 to $1,300,000.00 for each of the Huntington Accounts.

**F.     Rizek And IYS Ventures Carried Out Defendants' Fraudulent Scheme By Overdrawing Funds From The Huntington Accounts To Send Funds To Defendants.**

55.     In September 2022, IYS Ventures began initiating ACH Transactions that pulled funds into the Huntington Accounts from Sending Accounts held by entities affiliated with IYS Ventures and Rizek, including accounts at Chase, Business First Bancshares, Inc., Republic Bank of Chicago, BMO Harris Bank, N.A., Greenwoods State Bank, Old National Bank, and First National Bank Minnesota ("ACH Sending Accounts").

56.     However, the ACH Sending Accounts often did not have sufficient funds to settle the ACH transfers to the Huntington Accounts, resulting in numerous dishonored transactions (the "Dishonored ACH Transactions").

57.     During the ACH Float Periods for the various Dishonored ACH Transactions and before the Dishonored ACH Transactions settled, Huntington immediately made the ACH Float Funds for the respective Dishonored ACH Transactions available to IYS, up to the aggregate ACH Limit.

58.     Rizek took advantage of the ACH Float Period and initiated wire transfers of the ACH Float Funds from the Huntington Accounts to accounts held by IYS Ventures, Rizek, Leanne, I Mart, and/or Kenan at third-party financial institutions ("Wire Receiving Accounts").

**(i)     Rizek's And IYS Ventures' Use Of ACH Float Funds In Account 8201.**

59.     In October 2022, IYS Ventures initiated 79 ACH transactions to and deposited 10 checks into Account 8201.

60.     In November 2022, IYS Ventures initiated 103 ACH transactions to and deposited 12 checks into Account 8201.

61.     Of the 182 ACH transfers to Account 8201 between October 1, 2022, and November 30, 2022, 87 were returned to the ACH Sending Accounts due to insufficient funds in the ACH Sending Accounts. 22 checks were also returned for insufficient funds in the accounts on which the checks were drawn.

62.     The total amount of the 87 ACH transfers and the 22 checks that were returned was $11,064,708.47.

63.     During the ACH Float Periods for the Dishonored ACH Transactions in October 2022, IYS Ventures wire transferred $1,299,307.00 of the ACH Float Funds available in Account 8201 in October 2022 to the Wire Receiving Accounts.

64.     During the ACH Float Periods for the Dishonored ACH Transactions in November 2022, IYS Ventures wire transferred $2,620,060.95 of the ACH Float Funds available in Account 8201 in November 2022 to the Wire Receiving Accounts.

65.     Rizek and IYS Ventures wire transferred from Account 8201 to the Wire Receiving Accounts a total of $3,919,367.95 using the ACH Float Funds between October 1, 2022 and

November 30, 2022. This created an overdraft balance of $501,013.05 in Account 8201 by November 30, 2022.

      **(ii)**    **Rizek's And IYS Ventures' Use Of ACH Float Funds In Account 2014.**

66.     In September 2022, IYS Ventures initiated 13 ACH transactions to Account 2014.

67.     In October 2022, IYS initiated 48 ACH transactions to and deposited 4 checks into Account 2014.

68.     In November 2022, IYS Ventures initiated 183 ACH transactions to and deposited 7 checks into Account 2014.

69.     Of the 244 ACH transfers to Account 2014 between September 1, 2022 and November 30, 2022, 91 were returned to the ACH Sending Accounts due to insufficient funds in the ACH Sending Accounts. 11 checks were also returned for insufficient funds in the accounts on which the checks were drawn.

70.     The total amount of the 91 ACH transfers and the 11 checks that were returned was $11,158,496.89.

71.     During the ACH Float Periods for the Dishonored ACH Transactions in September 2022, IYS Ventures wire transferred $364,543.00 of the ACH Float Funds available in Account 2014 in September 2022 to the Wire Receiving Accounts.

72.     During the ACH Float Periods for the Dishonored ACH Transactions in October 2022, IYS Ventures wire transferred $1,709,706.00 of the ACH Float Funds available in Account 2014 in October 2022 to the Wire Receiving Accounts.

73.     During the ACH Float Periods for the Dishonored ACH Transactions in November 2022, Rizek and IYS Ventures wire transferred $1,812,442.08 of the ACH Float Funds available in Account 2014 in November 2022 to the Wire Receiving Accounts.

74.     Rizek and IYS Ventures wire transferred from Account 2014 to the Wire Receiving Accounts a total of $3,886,691.08 using the ACH Float Funds between September 1, 2022 and November 30, 2022. This created an overdraft balance of $757,337.29 in Account 2014 by November 30, 2022.

**(iii)    Rizek's And IYS Ventures' Use Of ACH Float Funds In Account 2027.**

75.     In September 2022, IYS Ventures initiated 43 ACH transactions to Account 2027.

76.     In October 2022, IYS initiated 110 ACH transactions to and deposited 3 checks into Account 2027.

77.     In November 2022, IYS Ventures initiated 189 ACH transactions to and deposited 7 checks into Account 2027.

78.     Of the 342 ACH transfers to Account 2027 between September 1, 2022, and November 30, 2022, 104 were returned to the ACH Sending Accounts due to insufficient funds at the ACH Sending Accounts. 10 checks were also returned for insufficient funds in the accounts on which the checks were drawn.

79.     The total amount of the 104 ACH transfers and the 10 checks for Account 2027 that were returned was $13,001,900.81.

80.     During the ACH Float Periods for the Dishonored ACH Transactions in September 2022, Rizek and IYS Ventures wire transferred $1,088,452.00 of the ACH Float Funds available in Account 2027 in September 2022 to the Wire Receiving Accounts.

81.     During the ACH Float Periods for the Dishonored ACH Transactions in October 2022, Rizek and IYS Ventures wire transferred $1,686,713.85 of the ACH Float Funds available in Account 2027 in October 2022 to the Wire Receiving Accounts.

82.     During the ACH Float Periods for the Dishonored ACH Transactions in November 2022, Rizek and IYS Ventures wire transferred $2,487,873.00 of the ACH Float Funds available in Account 2027 in November 2022 to the Wire Receiving Accounts.

83.     Rizek and IYS Ventures wire transferred from Account 2027 to the Wire Receiving Accounts a total of $5,263,038.85 using the ACH Float Funds between September 1, 2022 and November 30, 2022. This created an overdraft balance of $667,306.33 in Account 2027 by November 30, 2022.

**G.     Huntington's Demands To Cover The Overdraft Are Ignored.**

84.     As of December 6, 2022, the Huntington Accounts were overdrawn by $1,880,075.01 in the aggregate (the "Overdraft").

85.     On December 6, 2022, Huntington sent a demand letter to Defendants for immediate payment of the Overdraft ("Demand Notice"). A true and correct copy of the Demand Notice is attached hereto as **Exhibit 10**.

86.     Defendants have not responded to the Demand Notice or otherwise taken steps to cover the Overdraft.

## COUNT I – BREACH OF CONTRACT (DEPOSIT ACCOUNT AGREEMENT) (AGAINST IYS VENTURES, LLC)

87.     Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

88.     IYS Ventures entered into and agreed to be bound by the Deposit Account Agreement with Huntington for all of the Huntington Accounts.

89.     The Deposit Account Agreement is a valid and enforceable contract.

90.     Huntington performed all obligations required under the Deposit Account Agreement by, among other things, providing IYS Ventures with banking and financial services.

91.     Pursuant to Section 6(c) the Deposit Account Agreement, IYS Ventures has "no right to overdraw [the Huntington] Account[s.]"

92.     Under Section 6(c) of the Deposit Account Agreement, IYS Ventures agreed that it "must pay [Huntington] immediately for the amount of the overdraft and any associated fees."

93.     Under Section 13 of the Deposit Account Agreement, IYS Ventures further agreed to "indemnify [Huntington] and hold [Huntington] harmless from any claim (including reasonable attorneys' fees)" arising as a result of any debt owed by IYS Ventures to Huntington.

94.     IYS Ventures breached the Deposit Account Agreement by overdrawing Account 8201 by $495,822.39, Account 2014 by $716,946.29, and Account 2027 by $667,306.33, thereby creating the Overdraft, and failing to pay Huntington the amount of the Overdraft and the related costs and expenses, interest, and attorney's fees.

95.     Huntington has been damaged by IYS Ventures' breach of the Deposit Account Agreement in the amount of the Overdraft and other costs and attorney's fees associated with Huntington's efforts to recover the Overdraft amounts.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendant IYS VENTURES, LLC; award damages in the amount of $1,880,075.01, plus costs, interest, and attorney's fees; and grant all other relief to it the Court deems equitable and just.

## COUNT II – BREACH OF CONTRACT (TM SERVICES AGREEMENT) (AGAINST IYS VENTURES, LLC)

96.     Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

97.     IYS Ventures entered into and agreed to be bound by the TM Services Agreement with Huntington for all of the Huntington Accounts.

98.     The TM Services Agreement is a valid and enforceable contract.

99.     Huntington performed all obligations required under the TM Services Agreement by providing IYS Ventures with banking and financial services via its online banking portal and other remote banking services.

100.    Under Part I, Section 2 of the TM Services Agreement, IYS Ventures agreed to "pay [Huntington] the applicable fees and charges disclosed to you for use of [Huntington's services]" and that Huntington was "authorized to charge the fees and charges to any of your [Huntington] Account(s) when due[.]"

101.    In the event of an overdraft, IYS Ventures agreed to "repay [Huntington] immediately, without demand, the amount of such overdraft plus any overdraft fees, charges or interest[.]"

102.    IYS Ventures also agreed that "[i]f an [o]verdraft is created in an [a]ccount in order to complete a wire transfer, [IYS Ventures] agree[d] to immediately repay [Huntington], and [IYS Ventures] agree[d] and authorize us to debit any of [the Huntington] Accounts with [] in the amount equal to the overdraft and applicable fees."

103.    IYS Ventures breached the TM Services Agreement by overdrawing Account 8201 by $495,822.39, Account 2014 by $716,946.29, and Account 2027 by $667,306.33, thereby creating the Overdraft, and failing to pay Huntington the amount of the Overdraft and the related costs and expenses, interest, and attorney's fees.

104.    Huntington has been damaged by IYS Ventures' breach of the TM Services Agreement in the amount of the Overdraft and other costs and attorney's fees associated with Huntington's efforts to recover the Overdraft amounts.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendant IYS VENTURES, LLC; award damages in the amount of $1,880,075.01, plus costs, interest, and attorney's fees; and grant all other relief to it the Court deems equitable and just.

### COUNT III – FRAUD
### (AGAINST MUWAFAK RIZEK and IYS VENTURES, LLC)

105. Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

106. Rizek and IYS Ventures made false representations of material fact to Huntington, including but not limited to the following:

  a) The representations on June 13, 2022 that IYS Ventures operates and controls around seventy gas stations and that Rizek intended to move IYS Ventures' operating accounts from Chase to Huntington;

  b) The IYS Financial Statements that valued IYS Ventures' assets at $27,759,716.93;

  c) The Rizek Property List that listed eight properties purportedly owned by Rizek free and clear of all liens cumulatively valued at $7,120,000.00;

  d) The Rizek Financial Statements that valued Rizek's personal net worth at $31,905,679.00;

  e) The representation on June 23, 2022 that Rizek operated approximately seventy gas stations within Huntington's geographic footprint;

  f) The representations in September through October 2022 that Rizek was in the process of moving all IYS Ventures' operating accounts to Huntington; and

g) By initiating ACH transfers to the Huntington Accounts, the representation that sufficient funds existed in the ACH Sending Accounts to cover the wire transfer transactions to the Wire Receiving Accounts.

107.    Rizek and IYS Ventures made the aforementioned misrepresentations knowing that Rizek had no intention to transfer IYS Ventures' operating accounts to Huntington and as part of a scheme to defraud Huntington.

108.    Rizek and IYS Ventures knew that the IYS Financial Statements, the Rizek Property List, and the Rizek Financial Statements were grossly inflated and/or inaccurately represented Rizek's and IYS Ventures' financial status and ability to generate cash flow.

109.    Rizek and IYS Ventures also knew that the ACH Sending Accounts did not have sufficient funds to cover the ACH transfers to the Huntington Accounts and thus that the wire transfers from the Huntington Accounts would create the Overdraft.

110.    Rizek and IYS Ventures also knew that Rizek did not own, operate, or control anywhere near seventy (70) gas stations.

111.    Rizek and IYS Ventures made misrepresentations regarding their intent to move IYS Ventures' operating accounts to Huntington and their financial status as a part of a scheme to induce and defraud Huntington to increase the daily ACH Limits for the Huntington Accounts and allow Rizek and IYS Ventures access to increased funds to further their fraudulent scheme.

112.    Rizek initiated ACH transfers from the ACH Sending Accounts into the Huntington Accounts to induce Huntington to make available to IYS Ventures the ACH Float Funds that Rizek and IYS Ventures then used to send to wire transfers to the Wire Receiving Accounts.

113.    Huntington relied on Rizek's and IYS Ventures' intentional misrepresentations and approved ACH Limit increases for the Huntington Accounts and made the ACH Float Funds available to IYS Ventures.

114.    Huntington had a reasonable basis to believe that Rizek and IYS Ventures were in the process of moving IYS Ventures' operating accounts to Huntington, that Rizek's and IYS Ventures' assets and financial condition were sufficient to justify the ACH Limit increases, and that the ACH Sending Accounts contained sufficient funds to cover the wire transfer transactions to the Wire Receiving Accounts.

115.    Huntington's reliance was further justified by IYS Ventures' agreement, through Rizek, to compensate Huntington for any overdrawn funds from the Huntington Accounts, plus other costs and fees, pursuant to the Deposit Account Agreement and the TM Services Agreement.

116.    Huntington had no reason to believe at the time that it made the ACH Float Funds available in the Huntington Accounts that the ACH Sending Accounts did not have sufficient funds, that the Dishonored ACH Transactions would be dishonored and returned, or that Huntington would never receive funds from the ACH Sending Accounts or otherwise from Rizek or IYS Ventures.

117.    By the time Huntington received notice of the Dishonored Transactions, Rizek had already sent the ACH Float Funds via wire transfer to the Wire Receiving Accounts.

118.    As a result of Rizek's and IYS Ventures' intentional misrepresentations and fraudulent scheme, and Huntington's justifiable reliance upon Rizek's and IYS Ventures' misrepresentations, Huntington has suffered damages, in the amount of the Overdraft and other costs and attorneys' fees associated with Huntington's efforts to recover the Overdraft amount.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK and IYS VENTURES, LLC, jointly and severally; award damages in the amount of $1,880,075.01, plus costs, interest, and attorney's fees; award punitive damages; and grant all other relief to it the Court deems equitable and just.

## COUNT IV – WIRE FRAUD (18 U.S.C. § 1343)
## (AGAINST ALL DEFENDANTS)

119.    Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

120.    Under 18 U.S.C. § 1343, a party commits wire fraud where they "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

121.    Defendants committed wire fraud by obtaining the ACH Float Funds in the Huntington Accounts by means of false or fraudulent pretenses, intentional misrepresentations, and contrary to the terms in the Deposit Account Agreement and the TM Services Agreement, and transmitting such funds via multiple transfers "by means of wire . . . in interstate . . . commerce" to the Wire Receiving Accounts controlled by Rizek.

122.    Rizek and IYS Ventures obtained access to the ACH Float Funds by initiating ACH transfers from the ACH Sending Accounts to the Huntington Accounts when Rizek and IYS Ventures knew or should have known that the ACH Sending Accounts did not have sufficient funds.

123.    Moreover, Rizek and IYS Ventures obtained access to an increased amount of ACH Float Funds in the Huntington Accounts by falsely representing their financial status and ability to generate cash flow.

124.    Upon information and belief, all Defendants participated in this fraudulent scheme because Rizek is an officer and/or agent of IYS Ventures, I Mart, Leanne, and Kenan.

125.    Wire fraud under Section 1343 constitutes "racketeering activity" under 18 U.S.C. 1961(1)(B), which is unlawful under 18 U.S.C. 1962(c).

126.    Under 18 U.S.C. 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"

127.    18 U.S.C. § 1964(c) provides that "[a]ny person injured . . . by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"

128.    As a result of Defendants' wire fraud, Huntington is entitled to recover threefold the amount of the Overdraft, plus the cost of bringing suit, including reasonable attorney's fees.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award damages threefold of $1,880,075.01, plus the cost of the suit and reasonable attorney's fees; and grant all other relief to it the Court deems equitable and just.

## COUNT V – CONSPIRACY TO COMMIT WIRE FRAUD (18 U.S.C. §§ 1343, 1349) (AGAINST ALL DEFENDANTS)

129.    Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

130.    Under 18 U.S.C. § 1349, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

131.    Defendants committed wire fraud by obtaining the ACH Float Funds in the Huntington Accounts by means of false or fraudulent pretenses, intentional misrepresentations, and contrary to the terms in the Deposit Account Agreement and the TM Services Agreement, and transmitting such funds via multiple transfers "by means of wire . . . in interstate . . . commerce" to the Wire Receiving Accounts controlled by all Defendants.

132.    Upon information and belief, all Defendants participated in this fraudulent scheme because Rizek is an officer and/or agent of IYS Ventures, I Mart, Leanne, and Kenan.

133.    To the extent that any Defendants are found not to have committed wire fraud, they are subject to the same penalties as those having actually committed wire fraud by means of attempt and/or conspiracy.

134.    As a result of Defendants' wire fraud and Defendants' attempt and conspiracy to commit fraud, Huntington is entitled to recover threefold the amount of the Overdraft, plus the cost of bringing suit, including reasonable attorney's fees.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award damages threefold of $1,880,075.01, plus the

cost of the suit and reasonable attorney's fees; and grant all other relief to it the Court deems equitable and just.

**COUNT VI – BANK FRAUD (18 U.S.C. § 1344)**
**(AGAINST ALL DEFENDANTS)**

135.     Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

136.     Under 18 U.S.C. § 1344, a party commits bank fraud when it "knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises[.]"

137.     Huntington is a financial institution as defined in the foregoing statute.

138.     Defendants committed bank fraud by executing a scheme to defraud Huntington.

139.     Defendants also committed bank fraud by obtaining the ACH Float Funds in the Huntington Accounts by means of false or fraudulent pretenses, intentional misrepresentations, and contrary to the terms in the Deposit Account Agreement and the TM Services Agreement, and transmitting such funds via multiple wire transfers to the third-party Wire Receiving Accounts controlled by Rizek.

140.     Rizek and IYS Ventures obtained access to the ACH Float Funds by initiating ACH transfers from the ACH Sending Accounts to the Huntington Accounts when Rizek and IYS Ventures knew or should have known that the ACH Sending Accounts did not have sufficient funds to cover them.

141. Moreover, Rizek and IYS Ventures obtained access to an increased amount of the ACH Float Funds in the Huntington Accounts by falsely representing their financial status and ability to generate cash flow.

142. Upon information and belief, all Defendants participated in this scheme to defraud Huntington because Rizek is an officer and/or agent of IYS Ventures, I Mart, Leanne, and Kenan.

143. Bank fraud under Section 1344 constitutes "racketeering activity" under 18 U.S.C. 1961(1)(B), which is unlawful under 18 U.S.C. 1962(c).

144. Under 18 U.S.C. 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"

145. 18 U.S.C. § 1964(c) provides that "[a]ny person injured . . . by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"

146. As a result of Defendants' bank fraud, Huntington is therefore entitled to recover threefold the amount of the Overdraft, plus the cost of bringing suit, including reasonable attorney's fees.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award damages threefold of $1,880,075.01, plus the

cost of the suit and reasonable attorney's fees; and grant all other relief to it the Court deems equitable and just.

## COUNT VII – CONSPIRACY TO COMMIT BANK FRAUD (18 U.S.C. §§ 1344, 1349) (AGAINST ALL DEFENDANTS)

147.    Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

148.    Under 18 U.S.C. § 1349, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

149.    Defendants committed bank fraud by executing a scheme to defraud Huntington.

150.    Defendants committed such bank fraud by obtaining the ACH Float Funds in the Huntington Accounts by means of false or fraudulent pretenses, intentional misrepresentations, and contrary to the terms in the Deposit Account Agreement and the TM Services Agreement, and transmitting such funds via multiple wire transfers to the third party Wire Receiving Accounts controlled by all Defendants.

151.    Upon information and belief, all Defendants conspired and participated in this scheme to defraud Huntington because Rizek is an officer and/or agent of IYS Ventures, I Mart, Leanne, and Kenan.

152.    To the extent that any Defendants are found not to have committed bank fraud, they are subject to the same penalties as those having actually committed wire fraud by means of attempt and/or conspiracy.

153.    As a result of Defendants' bank fraud and their attempt and conspiracy to commit bank fraud, Huntington is entitled to recover threefold the amount of the Overdraft and the cost of bringing suit, including reasonable attorney's fees.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award damages threefold of $1,880,075.01, plus the cost of the suit and reasonable attorney's fees; and grant all other relief to it the Court deems equitable and just.

## VIII – CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

154.    Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

155.    Defendants conspired to obtain access to the ACH Float Funds in the Huntington Accounts, through Rizek and IYS Ventures' intentional misrepresentations to Huntington, and to further take from Huntington such funds via wire transfers to the Wire Receiving Accounts controlled by Defendants.

156.    Defendants constitute a combination of two or more persons acting in concert to perpetuate their fraudulent scheme.

157.    Defendants' conspiracy includes unlawful acts, including but not limited to, intentional misrepresentations, wire fraud, and bank fraud.

158.    A principal element of Defendants' conspiracy was injury and harm to Huntington evidenced by Rizek and IYS Ventures' knowing and intentional false representations of material facts regarding Rizek's and IYS Ventures' financial status, ability to generate cash flow, intent to transfer IYS Ventures' operating accounts to Huntington, and the amount of available funds in the ACH Sending Accounts.

159.     Defendants' overt acts in making intentional misrepresentations to Huntington and committing, or conspiring to commit, wire fraud and bank fraud resulted in damages to Huntington.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award compensatory damages in the amount of $1,880,075.01, plus costs, interest, and attorney's fees; award punitive damages, and grant all other relief to it the Court deems equitable and just.

<u>**COUNT IX – CONVERSION**</u>
<u>**(AGAINST ALL DEFENDANTS)**</u>

160.     Huntington re-alleges and incorporates by reference Paragraphs 1 through 86 as if they were fully set forth herein.

161.     Defendants caused the funds in the Huntington Accounts to be overdrawn through their transfer of funds via wire transactions from Huntington to Defendants in their Wire Receiving Accounts (the "Overdraft Funds").

162.     Huntington has a superior right to the Overdraft Funds under the Deposit Account Agreement and the TM Services Agreement.

163.     Huntington has an absolute and unconditional right to the immediate possession of the Overdraft Funds under the Deposit Account Agreement and the TM Services Agreement.

164.     Huntington made a demand for the return of the Overdraft Funds by sending the Demand Notice to Defendants.

165.     Defendants have failed to return the Overdraft Funds or respond to the Demand Notice.

166.     Therefore, Defendants have wrongfully assumed control, dominion, or ownership of the Overdraft Funds without authorization.

167.     The Overdraft Funds are an identifiable fund and thus are the proper subject of this conversion claim.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award compensatory damages in the amount of $1,880,075.01, plus costs, interest, and attorney's fees; award punitive damages, and grant all other relief to it the Court deems equitable and just.

## COUNT X – UNJUST ENRICHMENT (IN THE ALTERNATIVE TO COUNTS I AND II) (AGAINST ALL DEFENDANTS)

168.     Huntington re-alleges and incorporates by reference Paragraphs 1 through 13, 15, 17, 24 through 41, and 47 through 86 as if they were fully set forth herein.

169.     Rizek and IYS Ventures made false representations regarding their intent to move IYS Ventures' operating account to Huntington and their financial status.

170.     Rizek's and IYS's false representations caused Huntington to increase the daily ACH limits for the Huntington Accounts, which allowed Rizek and IYS Ventures access to an increased amount of ACH Float Funds.

171.     Rizek initiated ACH transfers from the ACH Sending Accounts into IYS Ventures' Huntington Accounts, knowing that the ACH Sending Accounts did not have sufficient funds to ultimately settle the ACH transfers.

172.    Before Huntington received notice of the Dishonored ACH Transactions, Defendant sent the ACH Float Funds to other third-party accounts held by Defendants via wire transfers.

173.    Defendants thereby caused the Huntington Accounts to be overdrawn.

174.    The Huntington Accounts were overdrawn by Defendants' wrongful conduct, including but not limited to, intentional misrepresentations, wire fraud, and bank fraud.

175.    Defendants unjustly retained the benefit of the Overdraft Funds to Huntington's detriment even after Huntington's demand for return.

176.    Defendants' retention of the Overdraft Funds violates the fundamental principles of justice and equity.

177.    Defendants will be unjustly enriched at Huntington's expense if allowed to retain the benefit of the Overdraft Funds, and therefore, Huntington is entitled to full restitution of the value of the benefit.

**WHEREFORE**, Plaintiff, THE HUNTINGTON NATIONAL BANK, respectfully requests that this Court enter judgment in its favor and against Defendants MUWAFAK RIZEK, IYS VENTURES, LLC, I MART STORES L.L.C., LEANNE HOLDINGS LLC, and KENAN ENTERPRISES, INC. jointly and severally; award damages in the amount of $1,880,075.01, plus its costs and expenses; and grant all other relief to it the Court deems equitable and just.

Dated: March 6, 2023                                    Respectfully submitted,

                                                        **THE HUNTINGTON NATIONAL BANK**

                                                By:    _/s/ William J. Serritella Jr._
                                                        One of Its Attorneys

William J. Serritella, Jr. (wserritella@taftlaw.com)
Yeoeun C. Yoon (yyoon@taftlaw.com)
Allison Lovell (alovell@taftlaw.com)
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
P: (312) 527-4000
F: (312) 527-4011

*Counsel for Plaintiff*